**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROBERT E. BATTLE and ASTOU L. BAMBA,<br><br>     Plaintiffs,<br><br>  v.<br><br>MERCEDES BENZ OF CHERRY HILL, MICHAEL HARTUNG, and TY CALDWELL,<br><br>     Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 22-06642 (KMW-EAP)<br><br>**MEMORANDUM OPINION** |

Appearances:

Robert E. Battle, *pro se Plaintiff*
Astou L. Bamba, *pro se Plaintiff*
1119 Mt. Holly Road
Beverly, NJ 08010

Jeffrey S. Craig, Esquire
Cockerill, Craig & Moore, LLC
58 Euclid Street
Woodbury, NJ 08096
*Counsel for Defendants HSF Enterprises, Inc., Michael Hartung, and Ty Caldwell*

   This matter comes before the Court by way of the Motion to Dismiss ("MTD") (ECF No. 7) filed by Defendants HSF Enterprises, Inc., Michael Hartung, and Ty Caldwell[1] (collectively, "Defendants") seeking to dismiss the Complaint filed by *pro se* Plaintiffs Robert E. Battle and Astou L. Bamba ("Plaintiffs"). Plaintiffs filed a response in opposition to Defendants' MTD.[2]

---

[1] HSF Enterprises, Inc. is improperly named "Mercedes Benz of Cherry Hill" in this matter's case caption. (ECF No. 7-2 at 1). HSF Enterprises, Inc. is the name of the New Jersey corporation that operates a licensed automobile dealership known as "Mercedes Benz of Cherry Hill". *Id.* at 3. Mr. Hartung is deceased and was the former president and owner of HSF Enterprises, Inc. *Id.* at 4. Mr. Caldwell is the finance manager of the automobile dealership. *Id.* For clarity and ease of reference, the Court will refer to the automobile dealership as "Mercedes Benz" throughout this opinion.

[2] Pursuant to Local Civil Rule 7.1(d)(2), "[t]he brief and papers in opposition to a motion . . . must be filed with the Clerk at least 14 days prior to the original motion day, unless the Court otherwise orders, or an automatic extension is obtained." Defendants' MTD was set before the Court on January 17, 2023 (ECF No. 7), making Plaintiffs' response due January 3, 2023. A note entered by the Clerk's Office explicitly states the response was due on January 3, 2023. (ECF No. 7). Plaintiffs did not seek an extension. Instead, they filed their response on June 5, 2023, over five months after a response was due, and did not provide an explanation for the late filing. In the interest of liberally construing

(ECF No. 9). The Court, having reviewed the submissions of the parties and considered the MTD without oral argument pursuant to Federal Rule of Civil Procedure 78(b), grants Defendants' MTD.

1)     This matter arises out of Plaintiffs' visit to Mercedes Benz in Cherry Hill on July 2, 2022, to purchase new automobiles "by extending [their] credit in consumer credit transactions." (ECF No. 1 at 4). Plaintiffs allege that they requested "to speak with the financial officer" after Defendants "refused [their] extensions of credit." *Id.* Plaintiffs eventually met with Mr. Caldwell, who told them "CEO Michael Hartung and other unnamed corporate heads had a meeting" and decided they would not use "1099 transactions or accept negotiable instruments," thereby refusing to accept documents Plaintiffs offered as a form of payment for the automobiles.[3] *Id.* As a result, Plaintiffs brought this action against Defendants alleging that they were "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accom[m]odations of any place of public accom[m]odation"[4] and that "Defendants were negligent in their duties as fiduciaries" to "administer [ ] Trusts for the benefits of . . . Plaintiffs." *Id.* at 5, 6. Specifically, Plaintiffs' Complaint appears to raise claims under the Fair Credit Reporting Act (the "FRCA"), 15 U.S.C. § 1681; the Sherman Act (the "Act"), 15 U.S.C. § 1; and Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a. *Id.* at 3, 9. Plaintiffs also seek the enforcement of their

---

*pro se* pleadings, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013), and affording Plaintiffs the benefit of "complete advocacy," *Richardson v. Cascade Skating Rink*, No. 19-8935, 2022 WL 2314836, at *2 n.1 (D.N.J. June 28, 2022), the Court will consider Plaintiffs' response in opposition to Defendants' MTD. Nonetheless, Plaintiffs are forewarned of the need to comport with the Local Civil Rules, as the Court will not consider any future untimely filings.

[3] Defendants argue Plaintiffs "demanded that [Mercedes Benz] extend credit to them" using "unidentified '1099 transactions' or 'negotiable instruments'" but Mr. Caldwell informed Plaintiffs that "the dealership only sold or leased vehicles based on payment of cash, check, or through financing from an approved lender." (ECF No. 7-2 at 1, 2).

[4] Here, Plaintiffs cite to language from Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. As Plaintiffs merely allege in their Complaint that Defendants violated 42 U.S.C. § 2000 and do not explicitly identify a subsection of that statute, the Court will liberally construe the Complaint and address Plaintiffs' claim as arising under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. *See Mala*, 704 F.3d at 244.

"unrebutted affidavit with all instructions therein," punitive damages in the amount of $500,000 per individual defendant and $1,000,000 per corporate defendant, and compensatory damages in the amount of $500,000 per individual defendant and $1,000,000 per corporate defendant.[5] *Id.* at 7.

2)     Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). *Pro se* complaints are liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, merely proceeding *pro se* does not absolve a litigant "from complying with *Twombly* and the federal pleading requirements." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010). *Pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). A *pro se* complaint will be dismissed if "it appears 'beyond

---

[5] Plaintiffs incorporate additional facts and allege additional causes of action against Defendants in their response in opposition to Defendants' MTD, including that they "made it known that they were consumers [ ] attempting to acquire a debt and have it paid by the department of treasury pursuant to 31 USC 5118" and that Defendants violated Article I of the New Jersey Constitution. (ECF No. 9-1 at 2, 3). A "complaint cannot be amended (or supplemented) by way of an opposition brief," even if the submission is from a *pro se* litigant. *Swift v. Pandey*, No. 13-649, 2013 WL 6022093, at *2-3 (D.N.J. Nov. 13, 2013). Accordingly, the Court does not consider additional facts or causes of action asserted in the response in opposition to Defendants' MTD.

3

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mishra v. Fox*, 197 F. App'x 167, 168 (3d Cir. 2006) (quoting *McDowell v. Del. State Police*, 88 F.3d 188, 189 (3d Cir. 1996)).

3)      First, Defendants move to dismiss Plaintiffs' claim under the Act. Section One of the Act "prohibits contracts, combinations, or conspiracies 'in restraint of trade.'" *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 267 (3d Cir. 1998) (quoting 15 U.S.C. § 1). "The essence of a Section [One] claim [under the Act] is the existence of an agreement." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005). "[T]here must be a 'unity of purpose or a common design and understanding or a meeting of the minds in an unlawful arrangement.'" *Id.* (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1131 (3d Cir. 1995)). "[A] 'person' under the Act includes both an individual and a corporation." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 n.15 (1984) (quoting 15 U.S.C. § 7). However, Section One of the Act "does not declare every combination between two 'persons' to be illegal." *Id.* Notably, "the principles governing [Section One] liability plainly exclude from unlawful combinations or conspiracies the activities of a single firm." *Id.* For instance, an "internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that [Section One] was designed to police." *Id.* at 769. "[O]fficers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together [the] economic power" of monopolization which Congress authorized the Sherman Act to scrutinize.[6]

---

[6] For purposes of clarity, a "firm" under the Act can refer to various types of entities, including corporations, hospitals, nonprofit organizations, and law firms. *See, e.g.*, *Copperweld*, 467 U.S. at 771 (discussing whether the coordinated activity of a parent corporation and its wholly owned subsidiary may be viewed as a single enterprise for purposes of Section One of the Act); *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934, 936 (6th Cir. 2016) (evaluating whether four previously independent hospitals operating as a hospital network should be characterized as a single entity under Section One of the Act); *Va. Vermiculite, Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 283 (4th Cir. 2002) (involving allegations that a nonprofit organization violated Section One of the Act by accepting a gift and whether a gift could be viewed as proof of "concerted action" in antitrust context); *Larry Pitt & Assocs. v. Lundy Law, LLP*, 57 F. Supp. 3d 445, 450 (E.D. Pa. 2014) (analyzing claims involving monopolization brought against a law firm under the Act).

4

*Id.* at 768, 769. "The conduct of a single firm is governed by [Section Two] alone and it is unlawful only when it threatens actual monopolization."[7] *Id.* at 767.

4)    Here, in liberally construing the Complaint, the Court interprets Plaintiffs' allegation that "CEO Michael Hartung and other unnamed corporate heads" meeting and deciding not to accept "1099 transactions" or "negotiable instruments" is the purported agreement on which Plaintiffs base their Sherman Act claim. However, the agreement among corporate officers at Mercedes Benz not to use 1099 transactions or negotiable instruments is not the type of activity targeted by Section One of the Act because the agreement is within a single firm. Moreover, in the Complaint, Plaintiffs do not plead any facts suggesting that Mercedes Benz is engaged in monopolization. Because the Court finds that Plaintiffs have failed to allege facts sufficient to constitute an unlawful agreement under the Act, this claim must fail. Therefore, Defendants' motion is granted, and Plaintiffs' Sherman Act claim is dismissed.

5)    Second, Defendants move to dismiss Plaintiffs' FRCA claim. Although Plaintiffs allege a violation of the FRCA against Defendants, they do not specify which provisions they believe Defendants have violated. However, it is well settled that the purpose of the FCRA is "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *SimmsParris v. Countrywide Fin. Corp.,* 652 F.3d 355, 357 (3d Cir. 2011) (quoting *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010)). Significantly, "[t]he FRCA places certain duties on those who furnish information to consumer reporting agencies." *Id.* Those duties include providing accurate information and conducting an investigation

---

[7] Monopoly power in violation of the Act "is the ability to control prices and exclude competition in a given market. If a firm can profitably raise prices without causing competing firms to expand output and drive down prices, that firm has monopoly power." *Broadcom Corp v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (internal citations omitted).

into the completeness and accuracy of information furnished in certain circumstances. *Id.*; *see also* 15 U.S.C. § 1681s-2(a), -2(b). A private citizen wishing to bring an action against a furnisher "must first file a dispute with the [credit] reporting agency, which then must notify the furnisher of information that a dispute exists. Only after this notification can the furnisher face any liability to a private individual." *SimmsParris*, 652 F.3d at 359. In this case, because Mercedes Benz is an automobile dealer and not a credit reporting agency, Plaintiffs' claim against Mercedes Benz under the FRCA must be related to Defendants' services as a furnisher of information. *See Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010) (stating FRCA imposes duties on credit reporting agencies and furnishers of information, with the latter category understood to include "any entity that reports information relevant to a consumer's credit rating [including] . . . auto dealers").

6)      Here, Plaintiffs' FRCA claim as pled against Defendants fails for a least two reasons. First, Plaintiffs do not allege the dealership furnished or provided any information, inaccurate or otherwise, about Plaintiffs to a credit reporting agency. Second, there are no allegations in the Complaint from which this Court can glean that Plaintiffs filed a dispute with a credit reporting agency related to Mercedes Benz. Because Plaintiffs fail to plead facts sufficient to indicate that Defendants furnished information about them to a credit reporting agency or that they filed a dispute related to the furnishing of any such information, their claim arising under the FRCA must fail. Therefore, Defendants' motion is granted, and Plaintiffs' FRCA claim is dismissed.

7)      Finally, Defendants move to dismiss Plaintiffs' claim arising under 42 U.S.C. § 2000, arguing that Plaintiffs' claim is brought pursuant to Title VI of the Civil Rights Act of 1964.

However, the Court will address Plaintiffs' claim under Title II of the Civil Rights Act of 1964[8] because Plaintiffs allege in their Complaint that they are "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accom[m]odations of any place of public accom[m]odation," which is language directly from 42 U.S.C. § 2000a. (ECF No. 1 at 5). To this end, Title II prohibits discrimination in places of public accommodation based on membership in a specified protected class, including national origin. It provides, in relevant part: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Places of public accommodation are "[e]stablishments affecting interstate commerce or supported in their activities by State action" and include "lodgings; facilities principally engaged in selling food for consumption . . . gasoline stations; [and] places of exhibition or entertainment." *See id.* § 2000a(b). Moreover, the civil remedies available under Title II are limited to preventative relief (e.g., injunction). *See Three Rivers Ctr. for Indep. Living v. Housing Auth. of City*, 382 F.3d 412, 420 (3d Cir. 2004). Stated differently, Title II does not entitle a plaintiff to money damages, outside of attorneys' fees, even where a defendant is judicially determined to have committed a violation. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968).

8)      Here, to the extent Plaintiffs allege that Mercedes Benz violated Title II, these claims fail because Mercedes Benz, an automobile dealership, does not qualify as a "place of public accommodation." *See Jones v. Brouwer*, No. CV 20-7067, 2020 WL 7127125, at *3 (C.D. Cal. Oct. 16, 2020) (acknowledging car dealerships are not considered places of "public accommodation" and citing cases where other district courts have similarly held car dealerships

---

[8] *See* n.4.

are not places of public accommodation covered under Title II). Moreover, to the extent Plaintiffs

seek monetary damages, same are not available under Title II in any event. Because Defendants

are not subject to liability pursuant to Title II of the Civil Rights Act of 1964, Plaintiffs' Complaint

which pleads a violation of Title II, fails to state a plausible claim upon which relief may be

granted. Therefore, Defendants' motion is granted, and Plaintiffs' claim is dismissed.

Dated:   August 4, 2023

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

8